IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


AMANDA KING,

          Plaintiff,

vs.                             Case No. 09-1332-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993). At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy. Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner
meets this burden if the decision is supported by substantial
evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II. History of case

On April 15, 2009, administrative law judge (ALJ) Robert J.
Burbank issued his decision (R. at 10-20). Plaintiff is insured
for disability insurance benefits through September 30, 2012 (R.
at 12). At step one, the ALJ found that plaintiff engaged in
substantial gainful activity until February 1, 2007; this is the
earliest onset of disability that can be established (R. at 12).
At step two, the ALJ found that plaintiff had the following
severe impairments: a history of juvenile arthritis and current

4

osteoarthritis (R. at 12).  At step three, the ALJ determined
that plaintiff's impairments do not meet or equal a listed
impairment (R. at 14).  After determining plaintiff's RFC (R. at
15), the ALJ found at step four that plaintiff is unable to
perform any past relevant work (R. at 19).  At step five, the ALJ
found that plaintiff could perform other jobs that exist in
significant numbers in the national economy (R. at 20).
Therefore, the ALJ concluded that plaintiff was not disabled (R.
at 20).

**III.  Did the ALJ err by failing to list certain impairments as
severe at step two?**

At step two, the ALJ found that plaintiff had severe
impairments of a history of juvenile diabetes and current
osteoarthritis (R. at 12).  Plaintiff argues that the ALJ erred
by not listing plaintiff's asthma, difficulty using her hands for
prolonged periods due to pain, and depression as severe
impairments at step two (Doc. 11 at 12).

The issue before the court is whether it is reversible error
if the ALJ fails to list all the severe impairments at step two.
In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July
8, 2008), the claimant argued that the ALJ improperly determined
that several of her impairments did not qualify as severe
impairments.  The court held that once an ALJ has found that
plaintiff has at least one severe impairment, a failure to

designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. In <u>Hill v. Astrue</u>, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal. However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

The ALJ stated that in making his RFC findings he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ also indicated that he considered the opinion evidence (R. at 15). The ALJ limited plaintiff to sedentary work because of plaintiff's asthma and arthritis (R. at 19). Furthermore, in making his RFC findings, the ALJ discussed the evidence relating to the use of her hands, and noted that plaintiff indicated in a report that she had denied problems using her hands (R. at 18). At step two, the ALJ

6

found that plaintiff did not have a severe mental impairment, relying on a consultative examination from Dr. Schwartz and a state agency assessment by Dr. Blum and Dr. Schulman indicating that plaintiff did not have a severe mental impairment (R. at 13-14, 248-249, 257-274). In light of the fact that the ALJ found other severe impairments at step two, and considered all symptoms and evidence in the subsequent steps of the sequential evaluation process, the court finds no reversible error by the ALJ at step two.

**IV. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative

discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ's RFC findings limited plaintiff to "perform the full range of sedentary work" (R. at 15).  The ALJ discussed the RFC opinions set forth by Dr. Shaver, a treatment provider, and set forth reasons for not giving his opinions either controlling

or substantial weight except to the extent that those opinions would limit plaintiff to sedentary work (R. at 17-18). Although the ALJ acknowledged that Dr. Shaver had noted limitations for the plaintiff in the use of her hands, he also noted that plaintiff had denied problems using her hands and engaged in a wide range of activities using her hands (R. at 17-18). In two function reports filled out by the plaintiff, on April 18, 2007, and again on September 21, 2007, plaintiff indicated that her impairments did not impact the use of her hands (R. at 149, 151, 193, 195). The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).

The ALJ also mentioned the opinion of the state agency assessment approved by Dr. Parsons (R. at 296-305). In that assessment, Dr. Parsons indicated that, under postural limitations, that plaintiff was limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling (R. at 298). Under environmental limitations, Dr. Parsons indicated that plaintiff needed to avoid concentrated exposure to extreme cold, vibration and fumes, odors, dusts, gases, poor ventilation, etc. (R. at 300). The ALJ noted these limitations by Dr. Parsons, but stated that:

> ...these factors are not generally present in

sedentary work (Social Security Rulings 83-14
and 85-15).

(R. at 19). For this reason, these limitations were not included
by the ALJ in plaintiff's RFC. Dr. Shaver also included postural
and environmental limitations for the plaintiff (R. at 309, 326).
Dr. Shaver agreed with Dr. Parsons that plaintiff was limited to
occasional balancing (R. at 309, 326). Dr. Parsons also
indicated that plaintiff should avoid either concentrated,
moderate or any exposure to various environmental factors (R. at
309, 326). Therefore, the undisputed medical opinion evidence
was that plaintiff had some postural and environmental
limitations. Plaintiff alleges error by the ALJ because he did
not include these limitations in plaintiff's RFC (Doc. 11 at 22-
23).

The ALJ asserts that occasional limitations in postural
maneuvers and the need to avoid concentrated exposure to extreme
cold, vibration and airborne irritants (fumes, odors, dusts,
gases, poor ventilation, etc.) are factors that are not generally
present in sedentary work. It is true that few occupations in
the unskilled sedentary base require work in environments with
extreme cold, extreme heat, wetness, humidity, vibrations, or
unusual hazards. Even a need to avoid all exposure to these
conditions would not, by itself, result in a significant erosion
of the sedentary occupational base. SSR 96-9p, 1996 WL 374185 at
9. Regarding exposure to fumes, dust, gases, poor ventilation,

etc., both Dr. Shaver and Dr. Parsons limited plaintiff to concentrated exposure (R. at 300, 309). However, when a person has a medical restriction to avoid excessive amounts of dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great amounts of dust, etc. SSR 85-15, 1985 WL 56857 at *8. Therefore, the court finds that the ALJ's conclusion that the need to avoid concentrated exposure to cold, vibration and airborne irritants would not have a significant impact on the ability to perform sedentary work is supported by the applicable Social Security Rulings.

However, the ALJ has failed to consider the relevant Social Security Ruling regarding the impact on balancing limitations on plaintiff's ability to perform sedentary work. Balancing limitations are specifically addressed in SSR 96-9p. It indicates, in relevant part, the following:

> Postural limitations...would not usually erode the occupational base for a full range of sedentary work significantly because those activities are not usually required in sedentary work...However, if an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base. However, if an individual is limited in balancing even when standing or walking on level terrain, there may be significant erosion of the unskilled sedentary occupational base. It is important to state in the RFC assessment what is meant by limited balancing in order to determine

> the remaining occupational base.
> Consultation with a vocational resource may
> be appropriate in some cases.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

Contrary to the ALJ's assertion that limitations in balancing is not a limitation that would impact the ability to perform sedentary work, SSR 96-9p clearly states that limited balancing may result in significant erosion of the sedentary base. SSR 96-9p, 1996 WL 374185 at *7; Gilmore-Williams v. Astrue, Case No. 09-1276-SAC (Doc. 19 at 8-9), 2010 WL 2952406 at *4 (D. Kan. July 26, 2010); Sexton v. Barnhart, Case No. 05-1192-JTM (Doc. 15 at 12 n.2), 2006 WL 4045984 at *5 (D. Kan. June 29, 2006). Therefore, it is important to state in the RFC assessment what is meant by limited balancing in order to determine the remaining occupational base. SSR 96-9p, 1996 WL 374185 at *7; Sexton, (Doc. 15 at 12 n.2), 2006 WL 4045984 at *5.

As noted above, the undisputed medical opinion evidence is that plaintiff is limited to occasional balancing. The ALJ made a conclusory statement that a limitation to occasional balancing would not impact the ability to perform sedentary work. The court finds that the ALJ's conclusory statement that a limitation in balancing is not a limitation that would impact the ability to perform sedentary work is not supported by substantial evidence, and clearly conflicts with SSR 96-9p. As noted above, SSR rulings are binding on an ALJ. Therefore, this case shall be

12

remanded in order for the ALJ to consider the impact of this limitation on plaintiff's ability to perform sedentary work in accordance with SSR 96-9p.

Furthermore, the record does not provide any medical evidence that clearly supports the ALJ's RFC finding.  The ALJ found that the opinions of Dr. Shaver were "not entitled to substantial weight in any area except to document the claimant's restriction to sedentary employment" (R. at 18).  However, nothing in Dr. Shaver's assessments supports a finding that plaintiff can perform sedentary work on a full-time basis.  The ALJ also stated that the opinions expressed by Dr. Parsons "have not been given substantial weight" (R. at 19).  Thus, the ALJ did not rely on any medical opinion evidence in making his RFC findings.

Dr. Shaver opined on two occasions that plaintiff would need to lie down or recline every 2 hours in order to alleviate symptoms during an 8 hour workday (R. at 309, 326).  Plaintiff testified that she has to lay down or sit with her feet propped up to prevent swelling and pain and to help with circulation (R. at 28, 30, 34).  The two function reports filled out by the plaintiff did not ask her if she needed to lie down during the day or keep her feet raised up while sitting (R. at 144-151, 188-195).  However, in one of the reports, plaintiff did indicate that she sat on the couch in the evening and kept her foot raised

up (R. at 144).  Thus, nothing in the function reports disputes either the opinion of Dr. Shaver or plaintiff's testimony regarding her need to recline or lie down or raise her feet while sitting.  Although the state agency assessment by Dr. Parsons did not indicate that plaintiff needed to lie down, recline, or keep her feet raised up, the ALJ found that the opinions of Dr. Parsons have not been given substantial weight.  Thus, the ALJ points to no substantial evidence that plaintiff does not need to lie down, recline or raise her legs and feet while sitting.

The ALJ must make every effort to ensure that the file contains sufficient evidence to assess RFC.  Without evidence to support his findings, the ALJ is not in a position to make an RFC determination.  <u>Fleetwood v. Barnhart</u>, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007).  In <u>Fleetwood</u>, the court stated that the ALJ should consider contacting the treating doctor(s) in order to obtain sufficient evidence upon which to base an RFC finding; if that option does not provide sufficient evidence, the ALJ may order a consultative examination.  211 Fed. Appx. at 741.

In the case of <u>Lamb v. Barnhart</u>, 85 Fed. Appx. 52, 55-57 (10th Cir. Dec. 11, 2003), the court held that the ALJ must ensure that a sufficient record exists to evaluate the claimant's exertional and nonexertional limitations.  The court noted that while the ALJ is not limited to considering only medical evidence, the ALJ's duty to develop the record may include

obtaining additional evidence from a treating physician or
ordering a consultative examination if the record does not
otherwise contain sufficient evidence upon which to base an RFC
finding.

In the case before the court, there is no competent medical
evidence to support the ALJ's determination that plaintiff can
perform a full range of sedentary work. Neither Dr. Shaver nor
Dr. Parsons indicated that plaintiff could perform a full range
of sedentary work; furthermore, the ALJ did not give substantial
weight to either opinion. The undisputed medical evidence is
that plaintiff is limited to occasional balancing. The ALJ must
state what is meant by limited balancing in order to determine
the remaining occupational base. This will likely require
additional medical opinion evidence. Furthermore, in light of
the opinion of Dr. Shaver that plaintiff needs to recline or lie
down every two hours, and the testimony of plaintiff that she
needs to either lie down or elevate her feet when sitting, the
ALJ should consider obtaining additional medical opinion evidence
on this issue as well.

## V. Did the ALJ err in his credibility analysis?

Plaintiff argues that the ALJ erred in his credibility
analysis (Doc. 11 at 26). Credibility determinations are
peculiarly the province of the finder of fact, and a court will
not upset such determinations when supported by substantial

evidence. However, findings as to credibility should be closely
and affirmatively linked to substantial evidence and not just a
conclusion in the guise of findings. <u>Kepler v. Chater</u>, 68 F.3d
387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore
evidence favorable to the plaintiff. <u>Owen v. Chater</u>, 913 F.
Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require
a formalistic factor-by-factor recitation of the evidence. So
long as the ALJ sets forth the specific evidence he relies on in
evaluating the claimant's credibility, the ALJ will be deemed to
have satisfied the requirements set forth in <u>Kepler</u>. <u>White v.
Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Qualls v. Apfel</u>,
206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need
not discuss every relevant factor in evaluating pain testimony.
<u>Bates v. Barnhart</u>, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An
ALJ must therefore explain and support with substantial evidence
which part(s) of claimant's testimony he did not believe and why.
<u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002). It
is error for the ALJ to use standard boilerplate language which
fails to set forth the specific evidence the ALJ considered in
determining that a claimant's complaints were not credible.
<u>Hardman v. Barnhart</u>, 362 F.3d 676, 679 (10th Cir. 2004). On the
other hand, an ALJ's credibility determination which does not
rest on mere boilerplate language, but which is linked to

16

specific findings of fact fairly derived from the record, will be affirmed by the court. <u>White</u>, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005); <u>White v. Barnhart</u>, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. <u>See</u> <u>Glenn v. Shalala</u>, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ stated in his decision that plaintiff's work history showed that plaintiff only worked sporadically prior to the alleged onset of disability (the ALJ determined that the earliest date for an onset of disability was February 1, 2007), which raised a question as to whether plaintiff's continuing unemployment is actually due to medical impairments (R. at 17).

17

The ALJ also questioned plaintiff's assertion that she stopped working due to pain, stating that her delay in seeking medical treatment suggested that her symptoms were not as limiting as she alleged (R. at 16). Not mentioned by the ALJ is the fact that the record includes a questionnaire filled out by plaintiff's supervisor in a job she held at White's Foodliner from July 31, 2006 through April 20, 2007 (R. at 141-143). The questionnaire included the following questions and answers:

> 3. Were there any limitations or impairments in the employee's ability to perform the job duties? If so, please describe.
>
> (answer): Yes, limped around on ankle (slow)
>
> 5. Did the employee have problems performing their expected duties in a timely and satisfactory manner? Is so, please explain.
>
> (answer): Yes, slow speed
>
> 7. Was the employee able to concentrate adequately? If not, please describe.
>
> (answer): No, said she was in pain.
>
> 11. Were there any noticeable changes in the employee's performance during the employment (e.g. absenteeism, tardiness)? If so, please describe them.
>
> (answer): Absent, had trouble walking
>
> 12. If the employee is no longer employed here, was the job terminated on a voluntary or non-voluntary basis? What were the reasons for termination?
>
> (answer): Had trouble staying on shift until 6:00 & absent too much

> 13.  Has this person ever worked a fulltime
> schedule for you?  Was there a need to adjust
> or reduce this schedule due to performance?
>
> (answer): Several months ago Amanda
> volunteered to take an extra day off because
> she thought it would make her ankle feel
> better

(R. at 142-143).  The supervisor indicated that he would not

rehire plaintiff because she was not dependable (R. at 143).

In <u>Blea v. Barnhart</u>, 466 F.3d 903 (10th Cir. 2006), the ALJ

failed to discuss or consider the lay testimony of the claimant's

wife; the ALJ's decision failed to mention any of the particulars

of the testimony of claimant's wife, and in fact, never even

mentioned the fact that she did testify regarding the nature and

severity of her husband's impairments.  The court held as

follows:

> In actuality, the ALJ is not required to make
> specific written findings of credibility only
> if "the written decision reflects that the
> ALJ considered the testimony." <u>Adams</u>, 93 F.3d
> at 715. "[I]n addition to discussing the
> evidence supporting his decision, the ALJ
> also must discuss the uncontroverted evidence
> he chooses not to rely upon, as well as
> significantly probative evidence he rejects."
> <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th
> Cir.1996).
>
> Here, the ALJ made no mention of Mrs. Blea's
> testimony, nor did he refer to the substance
> of her testimony anywhere in the written
> decision. Thus, it is not at all "clear that
> the ALJ considered [Mrs. Blea's] testimony in
> making his decision." <u>Adams</u>, 93 F.3d at 715.
> Additionally, Mrs. Blea's testimony regarding
> her husband's suicidal thoughts is not only
> uncontroverted; it serves to corroborate Dr.

Padilla's psychiatric examination of Mr.
Blea, where he stated that Mr. Blea has been
dysthymic for years. [citation to record
omitted] Thus, the ALJ's refusal to discuss
why he rejected her testimony violates our
court's precedent, and requires remand for
the ALJ to incorporate Mrs. Blea's testimony
into his decision. "Without the benefit of
the ALJ's findings supported by the weighing
of this relevant evidence, we cannot
determine whether his conclusion[s] ... [are]
supported by substantial evidence." <u>Threet</u>,
353 F.3d at 1190; <u>see also</u> <u>Baker v. Bowen</u>,
886 F.2d 289, 291 (10th Cir.1989) ("[W]here
the record on appeal is unclear as to whether
the ALJ applied the appropriate standard by
considering all the evidence before him, the
proper remedy is reversal and remand.").

<u>Blea</u>, 466 F.3d at 915.

The statement of plaintiff's former employer is
uncontroverted and provides at least some corroboration for the
allegations by the plaintiff of limitations that prevent her from
working on a full-time basis. Plaintiff raised as an issue in
her brief the failure of the ALJ to consider this statement (Doc.
11 at 26-27). Although defendant argues that this statement has
little relevance to the issue of performing sedentary work, an
ALJ's decision should be evaluated based solely on the reasons
stated in the decision. <u>Robinson v. Barnhart</u>, 366 F.3d 1078,
1084 (10th Cir. 2004). A decision cannot be affirmed on the
basis of appellate counsel's <u>post hoc</u> rationalizations for agency
action. <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th Cir.
1985). A reviewing court may not create <u>post hoc</u>
rationalizations to explain the Commissioner's treatment of

evidence when that treatment is not apparent from the Commissioner's decision. <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against <u>post hoc</u> justification of administrative action. <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004). The ALJ never mentioned the statement and therefore offered no explanation for why it should be accorded little or no weight. Furthermore, even sedentary work requires a certain amount of walking and standing. 20 C.F.R. § 404.1567(a).

In light of: (1) the ALJ's failure to mention this statement, (2) the ALJ's statement questioning whether plaintiff stopped work due to pain, and (3) the ALJ's statement that her sporadic work history prior to the alleged onset date of disability raises a question as to whether the plaintiff's continuing unemployment is actually due to medical impairments, the statement by the former employer should be considered when this case is remanded. The ALJ shall make new credibility findings in light of all the evidence, and should determine what weight, if any, should be accorded to this statement as part of the credibility determination.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with

this memorandum and order.

Dated this 22nd day of October, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge